# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
(SOUTHERN DIVISION)



CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770

March 2, 2026

LETTER TO COUNSEL

RE:     *Jonathan W. v. Bisignano, Commissioner of the Social Security Administration*[1]
        Civil No. GLS-25-0154

Dear Counsel:

Pending before this Court are briefs filed by Plaintiff Jonathan W. and the Social Security Administration.  (ECF Nos. 9, 16).  Upon review of the pleadings and the record, the Court finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2025).

The Court must uphold the decision of the Social Security Administration ("SSA" or the "Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial-evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Craig*, 76 F.3d at 589.  This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA.  *Id.*  For the reasons set forth below, I will reverse the Commissioner's decision in part and remand the case back to the SSA for further consideration.

## I.     BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on November 2, 2018.  (Tr. 17).  On July 9, 2018, the Plaintiff also filed a Title XVI application for a period of supplemental security income.  (*Id.*).  In both applications, the Plaintiff alleges that disability began on June 1, 2008.  (*Id.*).  The claim was initially denied on April 25, 2019, and upon reconsideration, denied again on October 9, 2019.  (*Id.*).  On December 5, 2019, Plaintiff filed a written request for a hearing, which was granted.  (*Id.*).  An Administrative Law Judge ("ALJ") held a telephonic hearing on March 2, 2023.  (Tr. 17, 65-78)*.*  However, as the Plaintiff was not present at the March 2 hearing, the ALJ held a second telephonic hearing on July

---

[1] On January 15, 2025, Plaintiff filed his case against Carolyn Colvin, then the Acting Commissioner of Social Security.  (ECF No. 1).  On May 7, 2025, Frank Bisignano became the Commissioner of the Social Security Administration.  Accordingly, consistent with Fed. R. Civ. P. 25(d), Commissioner Bisignano has been substituted as the Defendant in this case.

*Jonathan W. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-0154
March 2, 2026
Page 2

18, 2023.  (Tr. 17, 37-64)*.*  On January 8, 2024, the ALJ found that the Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  (Tr. 17-28).  On November 19, 2024, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision dated January 8, 2024, became the final and reviewable decision of the SSA.  (Tr. 1-3). *See* 20 C.F.R. § 422.210(a).

## II.    THE LAW

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is deemed to have a disability if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers either in the region where such individual lives or in several regions of the country."  *Id.* § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a).  *See, e.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).  The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations (the "Listings").  If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four.  At step four, the ALJ assesses the claimant's residual functional capacity ("RFC").  A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two."  *Mascio*, 780 F.3d at 635 (alteration in original) (quoting 20 C.F.R. § 416.945(a)(2)).  Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments.  Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

At steps one through four, it is the claimant's burden to show that he is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016).  If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled.  *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam).

*Jonathan W. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-0154
March 2, 2026
Page 3

## III.   ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The ALJ first evaluated Plaintiff's claim by following the sequential evaluation process outlined above.  (Tr. 20-28).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from June 1, 2008, the alleged onset date of Plaintiff's disability.  (Tr. 20).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: somatoform disorder, anxiety-related disorder, affective mood disorder, and migraine or tension headaches.  (*Id.*).  The ALJ found these impairments were severe because these impairments significantly limit the Plaintiff's ability to perform basic work activities as required by SSR 85-28. (*Id.*).  However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings.  (Tr. 20-24). Taking into account Plaintiff's severe impairments, the ALJ next assessed the Plaintiff's RFC. Despite Plaintiff's severe impairments, the ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] can frequently climb ramps and stairs. The [Plaintiff] can frequently balance, stoop, kneel, and crouch.  The [Plaintiff] can occasionally crawl.  The [Plaintiff] can occasionally climb ropes, ladders, and scaffolds.  The [Plaintiff] can occasionally reach overhead with the bilateral upper extremities.  The [Plaintiff] must avoid concentrated exposure to hazards, such as dangerous machinery and unprotected heights.  The [Plaintiff] can perform simple, routine tasks, requiring no more than occasional changes in the work setting, with no production rate for pace of work (e.g., assembly-line work).   The [Plaintiff] can tolerate occasional interaction with the general public and co-workers.

(*Id*. at 24).  At step four, the ALJ found that Plaintiff had no past relevant work.  (Tr. 26).

In assessing Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (Tr. 24).  The ALJ "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c."  (*Id.*).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Tr. 24-25).

The ALJ did not find the assessments of Plaintiff's primary care physician, W. DuBoyce, M.D., to be persuasive because the doctor's assessments indicating Plaintiff's various physical and mental limitations did not cite supportive clinical findings but indicated instead essentially normal

*Jonathan W. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-0154
March 2, 2026
Page 4

clinical findings.  (Tr. 21, 26).

The ALJ found the opinion of Anuja Kurichh, M.D., an internal medicine consultative examiner, regarding Plaintiff's postural and lifting limitations to be partially persuasive because it was "consistent to a degree with the assessment from the State agency medical consultant."  (Tr. 26, 790-95).

The ALJ found that the reports from the psychiatric consultative examiner S. Dhir, M.D., and the state agency psychological consultant H. Leizer, Ph.D., to be persuasive "to the extent that they suggest that [Plaintiff] retains adequate mental functional capacity to perform simple, routine tasks, requiring no more than occasional changes in the work setting, with no production rate for pace of work (e.g., assembly-line work).  [Plaintiff] is able to tolerate occasional interaction with the general public and co-workers."  (Tr. 21, 23, 26, 132-34, 781-86).

Before making a finding regarding step five, the ALJ conducted hearings on March 2, 2023, and July 18, 2023.[2]  (Tr. 37-78).  At the March 2 hearing, the Plaintiff did not appear; however, the hearing continued with his attorney and Mr. Sean Hanahue, a vocational expert ("VE") who testified relying upon the *Dictionary of Occupational Titles* and his own experience in the field of vocational rehabilitation.  The VE identified the Plaintiff's past relevant work: a museum tour guide and a fundraiser II.  (*Id*. at 73-74).  The ALJ asked the VE whether a hypothetical person with the same age, education, work experience, and RFC as the Plaintiff would be able to perform Plaintiff's past relevant work as actually or generally performed.  (*Id*. at 74).  The VE opined that the hypothetical individual would not be able to perform the past work.  (*Id*.).

The ALJ inquired whether other work exists that the hypothetical individual would be able to perform.  (Tr. 75).  The VE opined that the hypothetical individual could perform work as a night cleaner, garment sorter, or tagger.  (*Id*.).  The ALJ further inquired whether the same hypothetical individual would be able to perform any of those jobs if the individual was only able to maintain attention for a two-hour period before requiring a 15-minute break throughout the day.  (*Id*.).  The VE opined that the individual would still be able to perform the jobs identified and further advised as to the typical breaks allowed in such jobs. (*Id*.).

The Plaintiff's attorney then asked the VE about breaks and absenteeism.  (Tr. 76-77).  The VE opined that an employer would tolerate an employee's absence no more than five percent of the time, or 13 days per calendar year, and being off-task no more than five percent of the day. (*Id*.).

At step five, the ALJ ultimately determined that the Plaintiff was not disabled because he could perform work existing in significant numbers in the national economy, e.g., as a night cleaner, garment sorter, or tagger.  (Tr. 27-28).

---

[2] A supplemental hearing was held on July 18, 2023. (Tr. 37-64). The Plaintiff, his attorney, and Mr. George Starosta, a vocational expert, were present for the supplemental hearing.  (*Id*. at 37).  The ALJ did not ask Mr. Starosta to provide any testimony.

*Jonathan W. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-0154
March 2, 2026
Page 5

## IV.    DISCUSSION

On appeal to this Court, Plaintiff advances several arguments.  First, that the ALJ erroneously evaluated Plaintiff's subjective complaints.  Second, the ALJ erroneously assessed Plaintiff's RFC by failing to perform a function-by-function assessment of his ability to perform the physical and mental demands of work because the ALJ (a) failed to address Plaintiff's abilities to perform work-related activities for eight hours per day and five days per week; (b) failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence; (c) failed to evaluate properly the opinions of the consultative examiner and state agency physician; and (d) failed to address properly Plaintiff's migraine or tension headaches.  (ECF No. 9, pp. 3-24).  The SSA counters that: (1) the ALJ properly evaluated Plaintiff's subjective complaints based on substantial evidence; and (2) substantial evidence supported the ALJ's RFC assessment.  (ECF No. 16, pp. 5-18).

Regarding Plaintiff's headaches, Plaintiff contends that the ALJ failed to provide an adequate explanation of how he considered the frequency and duration of Plaintiff's headaches in assessing Plaintiff's RFC.  (ECF No. 9, p. 23).

I find that Plaintiff's argument regarding the ALJ's consideration of his headaches is persuasive.  Accordingly, I find that remand is appropriate, for the reasons set forth below.

Pursuant to 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1), a claimant's RFC captures his ability to do physical and/or mental work activities for a sustained period of time, given his limitations.  Put another way, a claimant's RFC is defined as the "most that a claimant can do despite his limitations." *Britt v. Saul*, 860 F. App'x 256, 261 (4th Cir. 2021).  To fashion an RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [his] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe*, 826 F.3d at 188); *see* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996). The Fourth Circuit has held that SSR 96-8p requires an ALJ to perform an RFC assessment that evaluates a "claimant's ability to perform the physical functions listed in [the regulations]," namely, "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions [that] may reduce [a claimant's] ability to do past work and other work." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (alteration in original) (quoting 20 C.F.R. § 416.945(b)).  It is only after such an assessment is performed "may an ALJ express RFC in terms of the exertional levels of work" that a claimant is capable of performing.  *Monroe*, 826 F.3d at 179.

Next, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion.  *Thomas*, 916 F.3d at 311.  If an RFC analysis lacks any of these components, the court is precluded from performing meaningful review.  *Id*.  The Fourth Circuit has made clear that the second component, the ALJ's logical explanation, "is just as important as the other two." *Id*.; *see Petry v. Comm'r, Soc. Sec. Admin.*, Case No. SAG 16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (ALJ should build "an accurate and logical bridge from the evidence to his

conclusion"); *Perry v. Berryhill*, 765 F. App'x 869, 871 (4th Cir. 2019) (decision "must include a narrative discussion describing how the evidence supports each conclusion").

In *Dowling,* the Fourth Circuit held that the ALJ erred in the RFC analysis performed. First, the ALJ erred by not using SSR 96-8p or other appropriate regulations when assessing the claimant's RFC. Instead, the ALJ used the incorrect legal framework and incorrectly focused only on the intensity and persistence of claimant's symptoms, and "the extent to which the alleged severity of those symptoms is supported by the record." 986 F.3d at 387. This kind of "symptom evaluation" is a different kind of analysis that SSR 96-8p and other regulations require for a proper RFC assessment. Second, the ALJ erred by first finding that the claimant had the RFC to perform sedentary work before performing a function-by-function analysis of how the claimant's impairments affected his ability to work. The *Dowling* court found that the ALJ's methodology of reaching a predetermined conclusion and then looking for evidence to support it was an inappropriate, out-of-order RFC assessment, per *Thomas*. *Id*. at 388. Third, despite ample evidence in the record that the claimant needed to work near a restroom and take frequent breaks, the ALJ failed to analyze that need to take breaks and whether it impacted her ability to work. *Id.* at 389. In sum, the Fourth Circuit found that these errors required reversal of the district court's affirmance of the ALJ's decision, and a remand for further administrative proceedings.

In this case, the ALJ found that Plaintiff suffered from the severe impairments of somatoform disorder, anxiety-related disorder, affective mood disorder, and migraine or tension headaches. (Tr. 20). Thus, the ALJ was required to cite to and analyze Plaintiff's RFC consistent with SSR 96-8p, *Dowling*, and *Thomas*. Upon reviewing the ALJ decision in this case, the ALJ made passing reference to "residual functional capacity," and what Plaintiff can do "despite limitations from his impairments." (Tr. 19). However, the ALJ did not make any explicit findings about Plaintiff's ability to "sit, stand, walk, lift, carry," or discuss whether his abilities in this regard impacted his ability to work. (Tr. 24, 25). Per *Dowling,* I find that this constitutes error. In addition, the ALJ first found that Plaintiff had the RFC to perform "light work," and then the ALJ dedicated several pages to identifying medical evidence that supported this conclusion. (Tr. 24-26). Per *Dowling* and *Thomas*, this was also erroneous.

Reviewing the ALJ's decision for his assessment of Plaintiff's migraine headaches yielded several factual findings. The ALJ opined that during the July 2023 hearing the Plaintiff testified that he has headaches every day that last up to eight hours. (Tr. 25, 46). Plaintiff also testified that "everything [he does] except for recovering in bed triggers tension headaches." (Tr. 47). He testified that remaining still and staying in bed relieves his headaches. (Tr. 25, 50, 54). The ALJ found that in September 2019 Plaintiff reported that he sometimes only showers once a week because of headaches or tension and that he cannot read for long periods of time because it triggers headaches. (Tr. 20-21). The ALJ also found that, during a physical examination in January 2023 by his primary care physician, Plaintiff had denied dizziness, fainting, headache, numbness, weakness, seizures, and tremors. (Tr. 21).

Plaintiff contends that the ALJ failed to explain how he considered the frequency and duration of Plaintiff's migraine headaches in assessing the Plaintiff's RFC. (ECF No. 9, pp. 19-

*Jonathan W. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-0154
March 2, 2026
Page 7

24).  Here, the ALJ did conduct a "symptom evaluation" (Tr. 24-25); however, this is a "separate and distinct inquiry" from a proper RFC assessment.  *Dowling*, 986 F.3d at 387.  The law is clear that the purpose of the RFC is to assess an individual's ability to do sustained work on a regular basis (eight hour workday, on task) despite his mental or physical impairments.  SSR 96-8p; *see Thomas*, 916 F.3d at 311; *Dowling*, 986 F.3d at 387.  Given that the ALJ found Plaintiff's migraines to be severe, the ALJ needed to clearly articulate how this impairment translated only into the RFC limitation of performing "light work" limited to, among other things, "simple, routine tasks, requiring no more than occasional changes in the work setting, with no production rate for pace of work (e.g., assembly-line work)" and "occasional interaction with the general public and co-workers." (Tr. 24).  *See Dowling*, 986 F.3d at 389 (ALJ's error required remand where, despite ample evidence in the record that the claimant needed to work near a restroom and take frequent breaks, the ALJ failed to analyze whether these severe limitations impacted her ability to work); *see also Muir v. Astrue*, Case No. SKG 11-2041, 2013 WL 140779, at *9 (D. Md. Jan. 3, 2013) (finding Plaintiff's headaches would prevent him from performing a full range of sedentary work on a sustained basis).

In addition, the ALJ does not clearly explain how the limitations in Plaintiff's RFC account for potential absenteeism or decreased productivity as a result of his migraine headaches.  At the July 2023 hearing, Plaintiff testified that he has headaches that start every morning that can last up to eight hours and he lies in bed until the headache goes away.  (Tr. 50, 53-54).  In reviewing the March 2023 hearing transcript, the VE testified that an individual could neither be "off task" more than five percent of the workday nor miss more than 13 workdays in a year; otherwise, gainful employment would be precluded.  (Tr. 76-77).  The ALJ failed to explain how the Plaintiff could miss any days of work or take frequent breaks due to his severe headaches, yet still remain competitively employable.  Because the ALJ's narrative did not build "an accurate and logical bridge from the evidence to his [RFC conclusions]," *Monroe*, 826 F.3d at 189, I cannot find that substantial evidence supports the ALJ's decision.  *See Fetter v. Comm'r, Soc. Sec. Admin.*, Case No. JMC 15-2250, 2016 WL 3646850, at *3 (D. Md. July 7, 2016) (remanding case because there was no indication that "the ALJ accounted for absenteeism or decreased productivity as a result of [the] migraine headaches").

Because this case is being remanded on other grounds, this Court will not address Plaintiff's remaining arguments, including his contention that the ALJ applied an erroneous standard in evaluating his subjective complaints. (ECF No. 9, pp. 3-10).  *See Nancy G. v. Kijakazi,* Civ. No. GLS 20-3440, 2022 WL 363824, at *5 (D. Md. Feb. 4, 2022).  On remand, however, the ALJ should address these arguments.

## V.    CONCLUSION

For the reasons set forth above, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate analysis.  The case is **REMANDED** for further proceedings in accordance with this opinion.  I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled and, therefore, not entitled to benefits, is correct.  The Clerk of the Court is directed to **CLOSE** this case.

*Jonathan W. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-0154
March 2, 2026
Page 8


        Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such.  A separate Order follows.


                                        Sincerely,

                                        _____/s/_____
                                        The Honorable Gina L. Simms
                                        United States Magistrate Judge